UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **Jason Grayson,** ) | COMPLAINT |
| ) | |
| **Plaintiff,** ) | Civil Action No. 4:24cv1487 JD |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| **Trans Union, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## COMPLAINT

1. This is an action brought by the Plaintiff, Jason Grayson, for actual, statutory, and punitive damages, attorney's fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq,* (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7.     This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8.     Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendant transacted business in this division.

## PARTIES

9.     The Plaintiff, Jason Grayson, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant TransUnion, LLC, ("TransUnion") is a limited liability company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's TransUnion credit file, mixed the Plaintiff's credit file with that of another consumer, and failed to

reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate, mixed credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

**FACTUAL ALLEGATIONS**

15. In 2021, Plaintiff resided in Murrells Inlet, South Carolina.

16. While residing at 4586 Lomax Court in Murrells Inlet, Plaintiff began receiving mail addressed to a "Jason Lawhon."

17. In March 2021, Plaintiff went to Kraft Credit Union to refinance an auto loan in order to reduce his car payments. At that time, the loan officer told him there was something going on with his credit reports, so Plaintiff did not qualify for the best rate.

18. As Plaintiff does not have credit cards and did not need any other credit at the time, he did not look into his TransUnion credit report in 2021.

19. However, beginning in March 2022, Plaintiff was in the market to purchase a new home. In April, Plaintiff and his wife found a home they wanted to purchase, and Plaintiff applied for a mortgage through First Trust Mortgage which had an APR of 3.25%.

20. Then, on or about May 2, 2022, Plaintiff received an email from First Trust Mortgage concerning "a problem that came up on Friday" with Plaintiff's credit report. Plaintiff's TransUnion credit score, which was 732 on April 19, had suddenly dropped 94 points to 638. The mortgage company informed Plaintiff that the drop in his score was due to a $1,180.00 medical bill that began reporting on Plaintiff's TransUnion credit report. Plaintiff was informed that in order for his credit score to increase back to 725, he would

need to pay off the debt and get it deleted from his credit report. Plaintiff would also need to provide a letter stating the debt had been paid and that it was being deleted. The mortgage company specifically stated Plaintiff needed to act fast since he was under contract.

21. The $1,180.00 medical bill reporting on Plaintiff's credit report did not belong to Plaintiff.

22. On May 2, 2022, after receiving the email from the mortgage company, Plaintiff immediately contacted Defendant and spoke to various representatives three or four times. Plaintiff finally spoke with a representative by the name of Troy Marquis. Mr. Marquis informed Plaintiff that TransUnion had submitted the collection account for deletion. Mr. Marquis also informed Plaintiff that TransUnion had mixed Plaintiff with another individual with the name "Jason Lawhon," whose Social Security Number was only one digit different than Plaintiff's. Mr. Marquis admitted that TransUnion had made the mistake and that TransUnion had assumed Jason Lawhon was just an alias because the first name was the same.

23. In total, Plaintiff was in contact with Defendant four to five times on May 2, 2022. Despite Plaintiff explaining the urgency of his situation to the Defendant's representatives, Defendant refused to fax or email Plaintiff the results of his dispute. Instead, Defendant insisted that it's policies required it to send Plaintiff the results of his dispute via mail, which could take up to 30 days.

24. After speaking with the Defendant, Plaintiff then emailed First Trust Mortgage to

let them know he had disputed the account with Defendant and that Defendant would provide him the results of his dispute via mail.

25. On May 3, 2022, First Trust Mortgage emailed Plaintiff stating they had submitted the Plaintiff's dispute information to their credit department to see if the credit department could help Plaintiff's mortgage application get approved rather than waiting on a letter from Defendant.

26. Plaintiff's loan through First Trust Mortgage was denied because his TransUnion credit file was mixed with Jason Lawhon.

27. On or about May 5, 2022, Defendant mailed Plaintiff the results of it's investigation which confirmed that the Central Portfolio Control account was deleted from Plaintiff's TransUnion credit file.

28. That same day, Defendant also mailed Plaintiff a copy of his TransUnion credit file following his dispute. Unfortunately, Plaintiff's May 5, 2022, credit file was ridled with errors. Specifically, despite Plaintiff's notice to Defendant that his file had been mixed, his credit report continued to contain the names Jason Mave Lawhon, Jason Maverick Lawhon, and Jason Lawhon, none of which were Plaintiff. The credit report also contained numerous incorrect addresses, telephone numbers, employment data, and accounts which did not belong to Plaintiff.

29. On May 9, 2022, Defendant mailed Plaintiff aother copy of his TransUnion credit file. This credit report added additional names which did not belong to Plaintiff. It also continued to contain numerous incorrect addresses, telephone numbers, employment data,

and accounts which did not belong to Plaintiff.

30. Plaintiff immediately began multiple online disputes via Credit Karma and directly with Defendant to correct his credit report.

31. In July 2022, Plaintiff was finally approved for a mortgage through Quicken Loans on the new home he and his wife had selected. Unfortunately, as a result of the delay caused by Plaintiff's mixed file, his mortgage rate was at 5.5% APR, 2.25% higher than the original loan.

32. Because Plaintiff was approved for the mortgage in July 2022, Plaintiff believed his mixed TransUnion credit file had been corrected by Defendant.

33. In early May 2023, Plaintiff wanted to buy a used 2012 Audi A4 he had found at a car dealership in North Carolina. Plaintiff applied for the loan but was again denied credit because of his credit report.

34. On or about May 10, 2023, Plaintiff attempted to obtain a copy of his TransUnion credit report online through www.annualcreditreport.com. However, his request was denied.

35. On May 10, 2023, Plaintiff mailed a letter to Defendant via certified mail requesting a copy of his credit report. In his letter, Plaintiff provided Defendant with his full address, Social Security number and Date of Birth.

36. Defendant received Plaintiff's letter on May 13, 2023.

37. On or about May 18, 2023, Defendant sent Plaintiff a letter stating it had received Plaintiff's request but that it didn't appear to have come from the Plaintiff. As a result,

Defendant requested Plaintiff to call Defendant to confirm his identity and the information he wished to dispute.

38. Upon receipt of the letter, Plaintiff immediately contacted Defendant to confirm he had sent the letter.

39. On or about May 26, 2023, Plaintiff received a copy of his TransUnion credit report.

40. On or about August 18, 2023, Plaintiff mailed a dispute letter to Defendant via certified mail. In this letter, Plaintiff stated he had received a copy of his Trans Union credit report and that there were numerous accounts reporting that did not belong to him. Specifically, Builtwell Bank was reporting four separate accounts on Plaintiff's credit report which did not belong to Plaintiff.

41. Defendant received Plaintiff's dispute letter on August 23, 2023.

42. On or about September 22, 2023, Plaintiff received a copy of Defendant's alleged investigation results, wherein Defendant notified Plaintiff that all four of the disputed Builtwell Bank accounts had been deleted.

43. On October 16, 2023, Plaintiff applied for a bank loan with Georgetown Kraft Credit Union in the amount of $25,000. Plaintiff was denied the loan based solely on his TransUnion credit report.

44. To date, Defendant continues to mix Plaintiff's credit file with Jason Lawhon by including accounts that do not belong to Plaintiff on Plaintiff's credit report.

45. As a result of Defendant's actions, Plaintiff continues to suffer damages and be denied credit.

## COUNT ONE
## FCRA - 15 U.S.C. §1681n

46. The Plaintiff adopts the averments and allegations of paragraphs 15 through 45 hereinbefore as if fully set forth herein.

47. Defendant maintains and distributes credit data files on the Plaintiff's credit.

48. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) providing Plaintiff's credit file to companies without determining that these companies had a permissible purpose to obtain Plaintiff's credit file pursuant to 15 U.S.C. §1681b.

49. The Plaintiff further alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

50. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, the Plaintiff is entitled to statutory damages.

51. As a result of Defendant's violations of the FCRA, the Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of credit, increased costs of credit, lost opportunities to receive credit, damage to reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, frustration, embarrassment, and humiliation. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

52. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

53. Plaintiff is entitled to attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

54. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

**COUNT TWO**
**FCRA 15 U.S.C. §1681o**

55. The Plaintiff adopts the averments and allegations of paragraphs 15 through 54 hereinbefore as if fully set forth herein.

56. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) providing Plaintiff's credit file to companies without determining that these companies had a permissible purpose to obtain Plaintiff's credit file pursuant to 15 U.S.C. §1681b.

57. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

58. As a result of Defendant's violations of the FCRA, the Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of credit, increased costs of credit, lost opportunities to receive credit, damage to reputation, worry, anxiety,

physical sickness, physical pain, headaches, loss of sleep, distress, frustration, embarrassment, and humiliation. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

59.    In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

60.    Plaintiff is entitled to attorney fees, pursuant to 15 U.S.C. §1681o(a).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.    For such other and further relief as the Court may deem just and proper.

/s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed ID #10323
**HAYS CAULEY, P.C.**
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ *Penny Hays Cauley*
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
508 Meeting Street
West Columbia, SC 29169